UNITED STATES DISTRICT COURT  ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK

ANTHONY JONES,

                          Plaintiff,

      - versus -

EAST BROOKLYN SECURITY SERVICES
CORP. and WINCHESTER KEY,

                         Defendant.

MEMORANDUM
AND ORDER
11-CV-1021 (JG) (SMG)

A P P E A R A N C E S:

    SAMUEL & STEIN
        38 West 32nd Street, Suite 1110
        New York, NY 10001
    By:    David Stein
        *Attorney for Plaintiff*

    GINSBERG & WOLF, P.C.
        225 Broadway, Suite 3105
        New York, NY 10007
    By:    Dov Medinets
        *Attorney for Defendants*

JOHN GLEESON, United States District Judge:

        Defendants East Brooklyn Security Services Corp. ("EB Security") and Winchester Key ("Key") jointly move this court to dismiss the amended complaint of their employee, Anthony Jones, who alleges in substance that the defendants failed to pay him overtime and other legally-required wages for the approximately 11 years that he worked for them. Jones's amended complaint alleges violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and New York Labor Law ("NYLL") §§ 198, 650, and also asserts common law claims for breach of contract, unjust enrichment, quantum meruit, and fraud.

Because I conclude that Jones has failed to state a plausible claim for relief for fraud, I grant the defendants' motion as to that claim, but the motion is otherwise denied.

BACKGROUND

A.  *Factual Allegations*

Jones's amended complaint alleges the following facts, which I assume to be true for purposes of this motion. Jones was employed by corporations owned by Key from 1999 until 2010. Am. Compl. ¶¶ 13, 15. He was first hired by the East New York Urban Youth Corps, Inc., which is operated by Key. *Id.* ¶ 13. Jones does not describe his job title or duties at East New York Urban Youth Corps, Inc., but his employment there does not appear to be the subject of his complaint. In approximately February 2000, Key incorporated a new business, EB Security. *Id.* ¶ 14. At that time, Jones's employment was transferred to EB Security, where he worked as a security guard from February 2000 until November 2010. *Id.* ¶ 15.

Jones's job title at EB Security was "Security Director." *Id.* ¶ 17. In this position, Jones had some supervisory responsibility over the other security guards, including conducting occasional staff meetings and making rounds to verify that other guards were doing their jobs. *Id.* ¶ 18. However, these supervisory tasks comprised only a few hours of Jones's work week, and were all performed "off the clock." *Id.* ¶¶ 18, 23. Jones spent the vast majority of his time – at least 56 hours per week and often more – doing the work of an ordinary security guard. *Id.* ¶¶ 17-18.

Jones was originally scheduled to work seven days per week, eight hours per day, for a total of 56 hours per week. *Id.* ¶ 21. However, Jones routinely worked double shifts, working for up to 16 hours a day, resulting in 112 hours per week. *Id.* ¶ 22. Because Jones's supervisory responsibilities added another few hours each week "off the clock," Jones routinely

worked 115 hours per week. *Id.* ¶ 23-24. When Jones was first hired in 2000, he was paid $8 per hour for all hours worked, without regard to the number of hours worked in a week. *Id.* ¶ 25. Jones received periodic raises of approximately $1 per hour, such that he was making $17 per hour by the time his employment ended in 2010. *Id.* ¶ 26. At all times, Jones was paid his regular hourly rate for all hours worked, regardless of the number of hours he had worked in a week. *Id.* When Jones asked about being paid overtime, Key told him that it was "not in the budget." *Id.* ¶ 27.

In spring of 2009, perhaps because of an increased awareness of their potential labor law liability, the defendants declared Jones a "full time exempt" employee, and told him he would be paid a fixed salary of $53,000 per year and his hours would be reduced to 80 hours per week. *Id.* ¶¶ 28-29 However, they said Jones's job duties would not change. *Id.* ¶ 29.

At all relevant times, EB Security had gross revenues in excess of $500,000. *Id.* ¶ 5. In addition, EB Security used goods and materials produced in interstate commerce, such as uniforms, walkie-talkies, and flashlights, and has employed at least two individuals who handled such goods. *Id.* ¶ 6. Key is an owner and principal of EB Security and has the power to hire and fire employees, set wages and schedules, and retain records. *Id.* ¶ 8. Jones and other security guards employed by the defendants were assigned to carry out their security guard duties at various locations, including a federally-funded senior citizen housing project, a White Castle fast food restaurant, and approximately a dozen different construction sites. *Id.* ¶ 20. In addition, the defendants entered into public works contracts with public entities, which required the defendants to pay prevailing wages and overtime benefits to employees who provided services under those contracts. *Id.* ¶ 60.

B.  *Procedural History*

Jones filed his original complaint on March 2, 2011, asserting eight claims against these two defendants: violation of FLSA for failure to pay overtime (Count I); violation of NYLL for failure to pay overtime (Count II); violation of NYLL for failure to spread hours (Count III); violation of NYLL for failure to pay wages (Count IV); breach of contract (Count V); unjust enrichment (Count VI); quantum meruit (Count VII); and fraud (Count VIII).  Compl., ECF No. 1.  The defendants failed to answer or otherwise respond to the complaint, and default was entered on July 25, 2011.  ECF No. 8.  However, on March 16, 2012, upon the Report and Recommendation ("R&R") of Chief Magistrate Judge Gold (ECF No. 11), I declined to enter default judgment against the defendants because Jones's complaint insufficiently alleged FLSA liability.  ECF No. 14.  Instead, I granted Jones leave to replead.  *Id.*  On April 12, 2012, Jones filed an amended complaint.  Am. Compl., ECF No. 17.  In his amended complaint, he asserts the same eight claims of his original complaint.  *Id.*  However, Jones added a bit more detail about the nature of the defendants' nexus with interstate commerce.  *See id.* ¶¶ 6, 20.

DISCUSSION

A.  *The Defendants' Argument for Dismissal on Procedural Grounds*

By Order dated March 16, 2012, Jones was directed to file and serve an amended complaint on or before April 14, 2012, and to thereafter file proof of service with the court.  ECF No. 14.  Jones submitted affidavits of service indicating that the defendants were not served with the summons and amended complaint until May 1, 2012.  *See* ECF Nos. 19, 20.  Therefore, defendants urge me to dismiss Jones's claims on the ground of res judicata, viewing this court's Order as a final order of dismissal on the merits once Jones's failed to serve the amended complaint within the allotted time frame.  *See* Defs.' Mem. at 4-6.

I disagree that my Order had such a far-reaching effect. First of all, it was not a dismissal; it was merely a denial of a motion for default judgment. I never dismissed the lawsuit, on the merits or otherwise. Accordingly, my Order was not a final disposition on the merits, and Jones's amended complaint was not barred by res judicata. Moreover, although Jones did effect service outside of the allotted time period, the defendants were not prejudiced by this delay. They had already been served with the original complaint, which asserted all of the claims in the amended complaint, and Jones filed his amended complaint on this court's Electronic Case Filing ("ECF") system within the prescribed time period. Although Jones ought to have effected service within the specified time period, such a failure does not warrant dismissal of the lawsuit.[1] I therefore proceed to the question of whether Jones's complaint has stated a claim for purposes of Rule 12(b)(6).[2]

B. *The Defendants' Rule 12(b)(6) Motion for Dismissal*

1. *Standard of Review*

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 173 (2d Cir. 2012). In making

---

[1] Rule 4(m) of the Federal Rules of Civil Procedure provides the court with some flexibility in how to handle a complaint that has not been served within the requisite time period:

> If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Certainly the complaint is not automatically dismissed without any further action by the court once a time period for service of process passes.

[2] In addition, Magistrate Judge Gold's R&R expressly required that "if and when plaintiff renews his motion for default judgment, plaintiff shall submit a memorandum of law explaining why he contends he is not an exempt employee under the FLSA and a supplemental declaration setting forth the relevant facts supporting his contention." R&R, at 3-4. Defendants fault Jones for not having complied with this directive. Defs.' Mem. at 6. However, plaintiff has not here renewed his motion for default judgment, and thus this obligation imposed by Judge Gold has not been triggered.

this determination, a court should assume all well-pleaded allegations in the complaint to be true "and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

2. *Analysis*

a. *FLSA Overtime*

Jones claims that the defendants violated the FLSA by failing to pay him a wage of at least one-and-a-half times his regular hourly wage for all work performed in excess of 40 hours per week. Am. Compl. ¶ 39.

The FLSA prohibits an employer from requiring

> any of his employees . . . [who] is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, [to work] a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

The defendants do not appear to dispute that Jones's complaint sufficiently alleges that he was not compensated at an appropriate rate for the overtime hours he worked.[3] Rather, the defendants contend that Jones's complaint fails to plead sufficient facts to establish that the defendants were "engaged in commerce," such that the FLSA applies to them. Defs.' Mem. at 6-8. In addition, the defendants argue that Jones is exempt from the FLSA because he

---

[3] Similarly, the defendants do not contest that both EB Security and Key are properly treated as Jones's joint employers for purposes of his FLSA claim. The FLSA applies to an "employer," which includes those "acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d); *see also Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 140 (2d Cir. 2008). This broad definition of employer intentionally covers some employers who "'might not qualify . . . under a strict application of traditional agency law principles,' in order to effectuate the remedial purposes of the act." *Barfield*, 537 F.3d at 141 (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)). Both federal regulations and Second Circuit precedent "recognize the possibility of joint employment for purposes of determining FLSA responsibilities." *Id.*; *see also* 29 C.F.R. § 791.2(a).

6

was employed in a bona fide executive capacity. Defs. Mem. at 8-10; *see* 29 U.S.C. § 213(a)(1). Neither argument succeeds.

(i) *Engaged in Commerce*

The FLSA overtime provision applies only to employees who are "(1) personally engaged in interstate commerce or in the production of goods for interstate commerce (so-called 'individual coverage'), or (2) employed in an enterprise engaged in interstate commerce or in the production of goods for interstate commerce (so-called 'enterprise coverage')." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 120 (E.D.N.Y. 2011) (citing 29 U.S.C. §§ 206(a), 207(a)) (quotation marks and alteration removed); *accord Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 96 (2d Cir. 2009). Jones has plausibly alleged enterprise coverage.[4]

Under enterprise coverage, a plaintiff need not himself or herself be personally involved in an activity which affects interstate commerce. *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 528 (S.D.N.Y. 1998). Rather, as long as the employer achieves an annual gross business volume of $500,000 or more, *all* of the employer's employees are covered under the Act as long as at least *some* handle, sell, or otherwise work on goods or materials that have

---

[4] It is possible that Jones has alleged individual coverage too, but I need not decide that question here. "[U]nder an individual theory of coverage, the test . . . is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it." *Blue v. Finest Guard Services, Inc.*, No. 09-CV-133 (ARR), 2010 WL 2927398, at *5 (E.D.N.Y. June 24, 2010) (quoting *Boekemeier v. Fourth Universalist Soc'y in City of New York*, 86 F. Supp. 2d 280, 287 (S.D.N.Y. 2000)), *report and recommendation adopted*, 2010 WL 2927403 (E.D.N.Y. July 19, 2010); *see* 29 U.S.C. § 207(a)(1) (requiring that the employee be "engaged in commerce or in the production of goods for commerce"). Numerous courts have held that security guards, or "watchmen," are covered by the FLSA so long as the businesses they help protect are themselves engaged in such commerce. *See Blue*, 2010 WL 2927398, at *5; L.S. Tellier, Annotation, *Janitors, Elevator Operators, Watchmen, and Other Service or Maintenance Employees, as Engaged in "Commerce" or in "Production of Goods for Commerce," within Fair Labor Standards Act*, 12 A.L.R.2d 1131 (collecting cases). Here, Jones has alleged that he provided security guard services at a White Castle fast food restaurant and a dozen construction sites. Am. Compl. ¶ 20. Jones may be considered to have engaged in commerce in protecting these businesses that are themselves engaged in commerce. However, courts are far from universal in adopting this position, and those that do tend to do so in contexts in which the watchman is guarding actual instrumentalities of commerce, such as trucks and shipping vessels. *E.g.*, 12 A.L.R.2d 1131 (collecting cases). While White Castle and construction sites are engaged in commerce in the broad sense, they are not strictly in the business of moving goods across state lines. However, I need not reach the question of whether Jones has alleged individual coverage, because, as explained in the text, I find that he has alleged enterprise coverage.

7

been moved in or produced for commerce.[5] 29 U.S.C. § 203(s)(1)(A)(i)-(ii). Thus, "local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." *Archie*, 997 F. Supp. at 530. Courts have held that this element is satisfied if employees "merely handled supplies or equipment that originated out-of-state." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011). Thus, enterprise coverage applies so long as some of the employees wear uniforms or use items such as radios, books, flashlights, clipboards, brooms, bags, and cleaning supplies that have moved in interstate commerce. *See id.* (collecting cases); *Archie*, 997 F. Supp. at 530-31.[6]

Jones has satisfactorily alleged enterprise coverage under the FLSA. He specifically alleged that EB Security has had gross revenues in excess of $500,000 at all times relevant to his complaint. Am Comp. ¶ 5. In addition, Jones alleged that EB Security had employees who handled materials that had moved in interstate commerce, such as uniforms, walkie-talkies, and flashlights. *Id.* ¶ 6. These allegations suffice to bring Jones within the FLSA's overtime provisions.

    (ii)  *Exemption for Executive Capacity*

The FLSA exempts from its overtime-pay rule "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). "The FLSA does not define 'bona fide executive, administrative, or professional' employment, and instead

---

[5] The FLSA provides that an enterprise is "engaged in commerce or in the production of goods for commerce" if it satisfies two criteria: (1) It "has employees engaged in commerce or in the production of goods for commerce" or it "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person"; and (2) its "annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)." 29 U.S.C. § 203(s)(1)(A)(i)-(ii); *see also Yang Li v. Ya Yi Cheng*, No. 10-CV-4664, 2012 WL 1004852, at *3 (E.D.N.Y. Mar. 23, 2012).

[6] It should not come as a surprise that, given the expansiveness of this test, "virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA." *Archie*, 997 F. Supp. at 530 (quoting *Dunlop v. Indus. Am. Corp.*, 516 F.2d 498, 501-02 (5th Cir. 1975)).

directs the Secretary of Labor to 'define[ ] and delimit[ ]' those terms 'from time to time by regulations.'" *Ramos v. Baldor Specialty Foods, Inc.*, No. 11-2616-CV, 2012 WL 2849656, at *3 (2d Cir. July 12, 2012) (quoting 29 U.S.C. § 213(a)(1) (alterations in original)).

> The Department's regulations provide:
>
> The term "employee employed in a bona fide executive capacity" . . . shall mean any employee:
>
> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . , exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).

"[B]ecause the FLSA is a remedial act, its exemptions, such as the 'bona fide executive' exemption claimed in this case, are to be narrowly construed." *Ramos*, 2012 WL 2849656, at *3 (quoting *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991)). The exemption should only be extended to "those plainly and unmistakably within its terms and spirit." *Id.* (quoting *A.H. Phillips, Inc., v. Walling*, 324 U.S. 490, 493 (1945)). "Accordingly, 'an employer bears the burden of proving that its employees fall within an exempted category of the Act.'" *Id.* (quoting *Martin*, 949 F.2d at 614; citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974)).

9

The defendants argue that the executive exemption applies to Jones. Jones's complaint acknowledges that his job title was "Security Director," and that he had some supervisory responsibility over his fellow security guard employees. Am. Compl. ¶¶ 17-18. Jones's supervisory duties included making rounds to verify that other guards were doing their jobs and conducting occasional staff meetings. *Id.* ¶ 18. Jones alleges that these supervisory responsibilities comprised only a "few hours" of his work week, and suggests later in his complaint that he spent approximately 3 hours on these tasks, as compared to up to 112 hours on his ordinary security guard duties. *Id.* ¶¶ 18, 22, 24. In 2009, Jones was declared "full time exempt," and began being paid a fixed salary of $53,000 per year. *Id.* ¶ 29.

I cannot say from the face of the complaint that Jones is exempt under the FLSA, especially given my duty to construe this exemption narrowly and my recognition that defendants bear the ultimate burden of establishing it. Accepting the truth of the allegations in the complaint (which I must), Jones was compensated on an hourly basis rather than by salary until at least 2009; thus he could not qualify for the exemption until at least 2009. Further, Jones's "primary duty" does not appear to be the "management of the enterprise" of which he was employed; rather, his primary duties appear to be ordinary security guard duties.[7] In

---

[7] 29 C.F.R. § 541.700 elaborates on the "primary duty" requirement:

> The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.
> . . . .
> . . . . [E]mployees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement.

addition, it is not clear that Jones "customarily and regularly direct[ed] the work" of his security guard colleagues, as opposed to doing so sporadically and infrequently. Finally, the complaint makes no mention of Jones's hiring or firing power, and the apparent inference to be drawn is that he had none. Although the defendants contend in their memorandum that Jones "had the ability to hire and fire employees with the authorization of Key" and "made recommendations for hiring and firing," Defs.' Mem. at 9, I may not dismiss a complaint simply because the defendants disagree with the plaintiff's factual allegations.[8] *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (permitting dismissal under Fed. R. Civ. P. 12(b)(6) if an "affirmative defense [barring the plaintiff's claim] . . . . is *clear from the face of the complaint*" (internal quotation omitted) (emphasis added)); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1277 (3d ed. 2004) ("[W]hen it is necessary to go outside the pleadings to establish or defend against a motion raising an affirmative defense, it can be done on a motion for summary judgment on the basis of a more fully developed record."). Accordingly, the defendants' motion to dismiss is denied with respect to Jones's FLSA overtime-pay claim.

      b.     *NYLL Claims*

Jones asserts three claims under New York Labor Law: for overtime, spread of hours, and failure to pay wages (Counts II, III, IV). The defendants do not move to dismiss these

---

29 C.F.R. § 541.700(a)-(b).

[8] Other arguments of the defendants on this point are simply disingenuous. For example, the defendants argue that by comparing Jones's allegation that "his security guard duties took up to 56 hours every week," Am. Compl. ¶ 18, with his allegation that he "routinely worked . . . 112 hours per week," *id.* ¶ 22, "Plaintiff inadvertently admits that more than half [h]is time was spent on supervisory duties." Defs.' Mem. at 9. This is an obvious and deliberate misreading of the complaint. Jones says he spent at least 56 hours on security guard duties each week "and generally many more," Am. Compl. ¶ 18, and that he "routinely worked double shifts, for a total of up to 16 hours a day, 112 hours per week." *Id.* ¶ 22. He then says that adding in the "several hours" spent on supervisory responsibilities meant he "routinely worked approximately 115 hours per week." *Id.* ¶ 24. Far from inadvertently admitting that he spent more than half of his time on supervisory responsibilities, the complaint clearly indicates that Jones worked between 56 and 112 hours per week on ordinary security guard duties, and generally about 3 hours per week on supervisory responsibilities.

11

NYLL claims, except to recommend that I decline to exercise supplemental jurisdiction over the state law claims in the event that I dismiss the FLSA claim. Defs.' Mem. at 10-11. Because Jones's FLSA claim survives, I need not address this argument.[9]

   c. *Breach of Contract*

Jones asserts a claim for breach of contract based on the defendants' obligation to pay prevailing wages under their public works contracts, and Jones's third-party beneficiary status under those contracts (Count V). Defendants move to dismiss this claim on the ground that "Plaintiff fails to allege even one public works contract or any facts particular to any particular public works contract." Defs.' Mem. at 11. Defendants also appear to argue that any public works contract would be irrelevant because "Plaintiff admits the wages paid to Mr. Jones were the agreed[-]to wages." *Id.*

To plead a viable claim for breach of contract under New York law, "a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (internal quotation omitted).

I conclude that Jones has sufficiently alleged that the public works contracts existed, that he adequately performed work on those contracts, that the defendants violated the contracts by failing to pay the relevant prevailing wages, and that Jones was thereby damaged. Although Jones's allegations regarding the public works contracts are indeed spare, they suffice to notify the defendants of the nature of Jones's claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that Rule 8 requires that the plaintiff's pleading "give the defendant fair

---

[9] Moreover, because Jones has stated a plausible claim under the FLSA, he has likely stated a claim under the NYLL, which "mirrors the FLSA" in important part. *Santillan v. Henao*, 822 F. Supp. 2d 284, 292-93 (E.D.N.Y. 2011).

notice of what the . . . claim is and the grounds upon which it rests" (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original)); *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ("[Rule 8] is designed to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery[.]"). This is especially true considering that the relevant facts relating to the defendants' various public works contracts may be peculiarly within the knowledge of the defendants, and it will likely be readily ascertainable to the defendants whether they entered into any public works contracts and whether Jones provided services on any of those contracts. Accordingly, the defendants' motion to dismiss this claim is denied.

        d.      *Unjust Enrichment and Quantum Meruit*

"To prevail on a claim of unjust enrichment, a party must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered[.]" *Old Republic Nat'l Title Ins. Co. v. Luft*, 52 A.D.3d 491, 491-92 (N.Y. App. Div. 2008).

"In order to recover in quantum meruit under New York law, a claimant must establish (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (internal quotation marks omitted); *accord Wehrum v. Illmensee*, 74 A.D.3d 796, 797 (N.Y. App. Div. 2010).

Under New York law, quantum meruit and unjust enrichment claims may be considered together as a "single quasi contract claim." *Mid-Hudson*, 418 F.3d at 175 (citation omitted). This is because "quantum meruit and unjust enrichment are not separate causes of

action"; rather, "unjust enrichment is a required element for an implied-in-law, or quasi contract, and quantum meruit, meaning 'as much as he deserves,' is one measure of liability for the breach of such a contract." *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 768 F. Supp. 89, 96 (S.D.N.Y. 1991) (cited with approval in *Mid-Hudson*, 418 F.3d at 175; *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 663 (2d Cir. 1996)), *rev'd on other grounds*, 959 F.2d 425 (2d Cir. 1992)). A claim for quasi-contract may be pleaded in the alternative to a contractual claim. *Newman & Schwartz*, 102 F.3d at 663; *see also* Fed. R. Civ. P. 8(d)(2). However, New York law does not permit recovery in quantum meruit if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim. *Mid-Hudson*, 418 F.3d at 175 (citing, *inter alia*, *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987)).

At bottom, Jones bases his unjust enrichment and quantum meruit claims on the allegation that the "[d]efendants failed to compensate Mr. Jones for all his time worked" and "failed to fully compensate [him] for his labor." Am. Compl. ¶¶ 68, 76. Jones also predicates the unjust enrichment claim on the public works contracts that the defendants allegedly entered into, alleging that the defendants were unjustly enriched because they were compensated under those public work contracts as if they had properly paid out the requisite wages and benefits, when in fact they had not. *Id.* ¶ 71-73. The defendants argue that Jones's claims for unjust enrichment and quantum meruit should be dismissed because "plaintiff may not bring these quasi contractual claims where there already exists a valid agreement, oral or written." Defs.' Mem. at 11 (emphasis omitted).

The defendants are correct that Jones may not ultimately prevail on both his contract and his quasi-contract claim. However, he may plead the quasi-contract claim in the

14

alternative. At this early stage, Jones has not yet established that a valid, enforceable agreement exists that covers the subject matter of his claim. Thus, I am unable to conclude that Jones's quasi-contract claim is necessarily precluded by contract. For example, Jones may be unable to recover on the public works contracts because he was not an intended third-party beneficiary of the contracts and thus lacks standing to enforce them. If so, he may nonetheless be able to make out a claim for unjust enrichment or quantum meruit if he can show that the defendants made extra money on the contracts based on the expectation that they would pay wage rates and benefits they did not in fact pay. Accordingly, Jones may pursue his quasi-contract claim simultaneously with his contractual claim.[10]

      e. *Fraud*

To state a cause of action for fraud under New York law, a plaintiff must allege (1) a material misrepresentation of a fact, (2) knowledge of its falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff and (5) damages. *Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, No. 11-4443, 2012 WL 1352590, at *1 (2d Cir. Apr. 19, 2012) (unpublished) (citing *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009)). Rule 9 subjects claims of fraud to a heightened pleading standard, requiring that the plaintiff "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This heightened pleading standard "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or

---

[10] The defendants have not here argued, and thus I do not consider, that these equitable claims are not viable because Jones has an adequate remedy at law. "Generally, if there is an adequate remedy at law, a court will not permit a claim in equity." *Bongat v. Fairview Nursing Care Ctr., Inc.*, 341 F. Supp. 2d 181, 189 (E.D.N.Y. 2004) (dismissing claims of unjust enrichment and quantum meruit under New York law where claim based on wage-and-hour-statute provided adequate remedy at law).

omissions) are fraudulent." *Eternity Global Master Fund Ltd.*, 375 F.3d at 187 (internal quotation marks omitted).

Jones bases his claim for fraud solely on the defendants' failure to inform him of the applicable wage rates and supplemental benefits to which he was entitled under the public works contracts on which he provided services. *See* Am. Compl. ¶¶ 79-80. Jones alleges that in so doing, the defendants intentionally and deceptively induced Jones to work for less than the compensation to which he was legally entitled. *Id.* ¶¶ 81-82.

These allegations do not state a plausible claim for fraud. In the first place, Jones does not specify which public works contracts he provided services on.[11] Nor does Jones specify the source or nature of the defendants' obligation to inform him of the wages to which he was entitled. Because Jones's fraud claim relies on an alleged omission rather than an affirmative misrepresentation, he must identify the obligation that the defendants' silence violated in order to "explain why the . . . omissions[] are fraudulent." *Eternity Global Master Fund Ltd.*, 375 F.3d at 187; *see also Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 119 (E.D.N.Y. 2011) ("[W]here the fraudulent inducement claim is premised on concealment so that the plaintiff cannot specify the time and place because no affirmative act occurred, the complaint must still allege: (1) what the omissions were (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff; and (4) what the defendant obtained through the fraud." (internal quotation marks omitted)). If the source of the obligation is statutory or contractual, then Jones's remedy properly lies in the body of law that created the obligation. Moreover, Jones has provided no allegations of fraudulent intent, much less any that "give[] rise to a strong inference of fraudulent intent." *See O'Brien v. Nat'l Prop. Analysts*

---

[11] Although I permitted Jones's claim for breach of contract to survive without identifying the specific public works contracts he hopes to recover under, given Rule 9(b), I cannot permit his claim for fraud to survive without greater particularity.

*Partners*, 936 F.2d 674, 676 (2d Cir. 1991). In sum, Jones has added nothing to his allegations of breach of contract to support a claim for fraud. Accordingly, this claim is dismissed.

## CONCLUSION

Jones has stated a plausible claim for overtime pay under the FLSA, overtime pay, spread of hours, and failure to pay wages under the NYLL, breach of contract, and quasi-contract. Accordingly, the defendants' motion to dismiss is denied with respect to these claims. However, the defendants' motion is granted as to Jones's claim for fraud, because his allegations do not satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b).

So ordered.


John Gleeson, U.S.D.J.


Dated: August 7, 2012
      Brooklyn, New York